# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| ERGUN M. CANER, | CASE NO. 6:14-cv-00004 |
| *Plaintiff,* | |
| v. | **MEMORANDUM OPINION** |
| JONATHAN AUTRY, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This case is before the Court on Defendant Jonathan Autry's Motion for Fees and Costs ("Motion for Fees"), filed on May 28, 2014. Ergun M. Caner ("Plaintiff" or "Caner") originally filed this action in the Northern District of Texas, claiming that Jonathan Autry ("Defendant" or "Autry") and another person, Jason Smathers, infringed his copyrights by posting various videos on YouTube.com and other websites. After transfer to this Court, I granted Defendant's Motion to Dismiss the Amended Complaint for Failure to State a Claim, or in the Alternative, for Summary Judgment ("Motion for Summary Judgment") in a memorandum opinion and order filed on May 14, 2014. I found that Plaintiff failed to satisfy a prerequisite to copyright suit for one video, that the other video qualified for fair use protection, and that further discovery could not present any genuine dispute of material fact. I therefore construed Defendant's motion as one for summary judgment, granted the motion, and dismissed Plaintiff's amended complaint. Defendant now requests $34,389.59 in attorney's fees and costs. Since I find that the fees and costs requested are reasonable under 17 U.S.C. § 505, I will grant Defendant's motion for fees in full.

1

## II. Background[1]

Ergun M. Caner was born to parents who met at a university in Sweden, and he lived with them and his brothers in Ohio from the time he was a toddler.  His father was a devout Muslim, highly involved in the Islamic Community in Ohio, and after a painful divorce, Plaintiff spent weekend visitation at the mosque in Columbus, Ohio with his father.  Sometime during high school, Plaintiff began attending church with a friend and became a born-again Christian, going on to obtain a Master of Theology from Southeastern Baptist Theological Seminary in Wake Forest, North Carolina, and a Doctor of Theology from the University of South Africa.  About a year after the terrorist attacks on September 11, 2001, Plaintiff and his brother, Emir Caner, wrote what became a popular book about their upbringing as Muslims in Ohio and their conversion to Christianity.  Plaintiff became a spokesperson for this background, and was hired by Jerry Falwell in 2005 to serve as the dean of the Liberty Theological Seminary.

Around this time, Plaintiff started making claims in his public speeches that he had grown up as a Muslim in Turkey, steeped and trained in jihad, in a tradition that went back several generations in his father's family.  In May 2010, after bloggers and major news media outlets began reporting on contradictions in Plaintiff's narrative, Liberty University conducted an official inquiry into these accusations.  Shortly thereafter, Liberty demoted Plaintiff from his position as dean, citing contradictions in factual statements he had made.  By 2011, Plaintiff announced that he was called to serve as provost and vice president of academic affairs at Arlington Baptist College in North Texas.[2]

---

[1] I take these facts from the May 14, 2014 Memorandum Opinion, where I summarized the facts based on allegations in the Amended Complaint, sources of which I took judicial notice, and from the record before me on the Motion for Summary Judgment. For the exact sources and bases on which I admitted of these facts, *see Caner v. Autry*, No. 6:14-CV-00004, --- F. Supp. 2d ---, 2014 WL 2002835, at *2–3 (W.D. Va. May 14, 2014).

[2] In December 2013, Brewton-Parker College, a Southern Baptist College in Georgia, hired Caner as its President. He began his new job on January 1, 2014.  *See* Peter Lumpkins, "Longtime Southern Baptist educator and foreign

2

Defendant attended Liberty Theological Seminary during the time Plaintiff served as dean, and as Plaintiff concedes, initially supported Plaintiff and his message. Eventually, revelations led Defendant to believe that Plaintiff was a detriment to the Christian religion and their common institution, Liberty University. Although accusations against Plaintiff emerged in 2010, it was not until the spring of 2011 and the spring of 2012 that Defendant joined the criticism by posting two videos named in the amended complaint (hereinafter the "Count One Video" and "Count Two Video"). Mot., Ex. A ¶¶ 8, 18.

In February 2012, Defendant posted the Count One Video, in which Plaintiff proclaimed his Muslim upbringing in Turkey and expounded on how Muslims in the Middle East would view the U.S. Marines and approach them from the perspective of jihad. Mot., Ex. A ¶¶ 9, 18, 20–23. Defendant wished to expose Plaintiff's dishonesty, knowing he was making claims like those in the Count One Video to countless churches and before the U.S. Military. Mot., Ex. A ¶¶ 21–23. Dr. Caner claimed Autry infringed on a copyright "to the content of his presentation," by posting this video, an application for which he said was "currently pending at the Copyright Office." Am. Compl. ¶ 14.

Count Two of the Amended Complaint alleged that Autry infringed Caner's rights with a second video, titled "Ergun Educated in Cairo, Egypt," ("Count Two Video") which "includes live portions of recorded footage of Dr. Caner during various presentations and sermons." Am. Compl. ¶¶ 20–22. Dr. Caner alleged that he "own[ed] the copyright to the content of his presentation and ha[d] not authorized Autry to use any portion of this work." Am. Compl. ¶ 22.

Plaintiff first responded to Defendant's videos by filing a takedown notice with YouTube.com in May 2013, claiming he possessed copyright protection over the Count One and

---

missionary named President Emeritus of Brewton-Parker College, BPC News, May 14, 2014, http://www.bpc.edu/news_and_info/news/2014/May/5-14_Simoneaux_Named_BPC_President_Emeritus.htm. I took judicial notice of this career transition in the Memorandum Opinion, see Caner, 2014 WL 2002835, at *2 n.3.

Two Videos.  Am. Compl. ¶ 9.  Defendant contested the videos' removal, and on June 4, 2013, YouTube.com informed Plaintiff that it would repost the videos unless Plaintiff filed legal action within ten business days.  Am. Compl. ¶ 12.

This suit followed in the Northern District of Texas, on June 18, 2013.  On October 14, 2013, Plaintiff filed his Amended Complaint, seeking a permanent injunction against purported copyright infringement, along with costs, attorney's fees, investigatory fees, and expenses available under 17 U.S.C. § 505 (the "Copyright Act").  Am. Compl. ¶¶ 48–50.  The parties filed various motions in the Northern District of Texas, including Defendant's Motion for Summary Judgment, filed on November 26, 2013.  Dr. Caner responded to the Motion for Summary Judgment on January 6, 2014.  On January 15, 2014, the Northern District of Texas severed Jonathan Autry from the case and transferred it to this Court, where only two videos, from count one and count two of the Amended Complaint, remained at issue.

Upon arrival in this Court and after a motion to stay discovery was filed by Defendant, Magistrate Judge Robert S. Ballou ordered the parties to hold a scheduling conference, exchange initial disclosures, and exchange written discovery while the Motion for Summary Judgment was pending, but allowed Defendant to stay further discovery until the Motion's disposition.  *See* April 11, 2014 Order.  On April 4, 2014, Defendant filed his reply on the Motion for Summary Judgment.  On April 28, 2014, Defendant filed an unopposed Motion to Supplement the Record with copies of the copyright applications Plaintiff had filed with the Copyright Office, which this Court granted.  *See* April 29, 2014 Order.  A telephonic hearing on the Motion for Summary Judgment was held on April 30, 2014.  After the hearing, Defendant filed a Second Motion to Supplement the Record with information contesting Plaintiff's assertion that Defendant was a disgruntled former employee, which this Court denied.

As noted, on May 14, 2014, I considered Defendant's motion as one for summary judgment and granted the motion, dismissing Plaintiff's Amended Complaint. On May 28, 2014, Autry submitted this Motion for Fees and Costs ("Motion for Fees"), along with supporting documentation. Both parties have timely briefed the motion.

### III. LEGAL STANDARD

"The Copyright Act provides that a district court may in its discretion award costs and 'may also award a reasonable attorney's fee to the prevailing party as part of the costs.'" *O'Well Novelty Co. v. Offenbacher, Inc.*, 225 F.3d 655, at *7 (4th Cir. 2000) (unpublished) (citing 17 U.S.C. § 505). The United States Supreme Court has instructed that, in copyright cases, "[p]revailing plaintiffs and prevailing defendants are to be treated alike." *Id.* (citing *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533–34 (1994)). Therefore, whether defendant or plaintiff, a court can award a prevailing party in a copyright case its reasonable costs and attorney's fees.

A party prevails under § 505, as in other contexts, when the party obtains "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111; *see also Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (acknowledging that "judgments on the merits" as well as "settlement agreements enforced through [] consent decree[s] may serve as the basis for an award of attorney's fees," because they constitute "chang[es] [in] the legal relationship between [the plaintiff] and the defendant.").

In determining whether to award fees to a prevailing party in a copyright case, a district court in the Fourth Circuit should consider: "(1) the motivation of the parties, (2) the objective reasonableness of the legal and factual positions advanced, (3) the need in particular

5

circumstances to advance considerations of compensation and deterrence, and (4) any other relevant factor presented." *Allora, LLC v. Cambridge Builders of Johnston Cnty., Inc.*, 532 F. App'x 349, 351–52 (4th Cir. 2013) (internal quotation marks omitted). If these factors weigh in favor of awarding fees, a court uses the lodestar method to determine what amount of attorney's fees would prove reasonable.

A court calculates the lodestar figure "by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In determining "what constitutes a 'reasonable' number of hours and rate, [the United States Court of Appeals for the Fourth Circuit has] instructed that a district court's discretion should be guided by . . . twelve factors" adopted from *Johnson v. Georgia Highway Express, Inc.*, discussed later in this opinion.

## IV. DISCUSSION

Before determining whether Defendant's requested attorney's fees and costs are reasonable, I must determine whether they should be awarded at all under 17 U.S.C. § 505 and the *Diamond Star* factors. I find that these factors support an award of attorney's fees for Defendant and that the amount of fees Defendant requests is reasonable under the *Johnson* test.

### A. Prevailing Party and *Diamond Star* Factors

A prevailing party must obtain "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111; *see also Buckhannon*, 532 U.S. at 604. When a court grants summary judgment to a defendant facing allegations of copyright infringement, that defendant qualifies as a prevailing party under 17 U.S.C. § 505. *See, e.g.*, *Cramer v. Crestar Fin. Corp.*, 67 F.3d 294, at *6 (4th Cir. 1995) (unpublished) ("[W]e agree

with the district court's conclusion that [the defendant] 'was the prevailing party on the copyright counts, because, in fact, [the defendant] won summary judgment in its favor against the allegation that it had committed certain copyright violations.'"); *Allora, LLC v. Cambridge Builders of Johnston Cnty., Inc.*, 532 F. App'x 349, 351, 351 (4th Cir. 2013) (unpublished) (holding that plaintiff for whom district court granted motion for summary judgment on copyright claim was properly classified as a prevailing party).

In the May 14, 2014 Memorandum Opinion and Order, I granted Defendant's Motion for Summary Judgment, dismissing both counts of Plaintiff's amended complaint. For count one, I found that Plaintiff had failed to satisfy a prerequisite to bringing a copyright suit, because he had failed to apply for a copyright over the Count One Video. I held that Defendant's use of the Count Two Video was a transformative, critical fair use, immunizing him from liability under the Copyright Act. Furthermore, I found that "the facts Plaintiff [sought] through further discovery would not change the analysis or present any 'genuine dispute as to any material fact.'" *Caner*, 2014 WL 2002835, at *21. These findings granted Defendant relief on the merits, and Plaintiff does not contest that Defendant is now a prevailing party under 17 U.S.C. § 505. *See cf.* Pl.'s Resp. to Mot. for Fees at 3 ("Dr. Caner had his 'day in court' and the Court ruled on the side of fair use."). I find that Defendant qualifies as a prevailing party under the Copyright Act.

In exercising my discretion over whether to award Defendant attorney's fees and costs, I must consider the parties' motivations, the objective reasonableness of their positions throughout the litigation, any need for compensation and deterrence, and any other relevant factor. *See Allora*, 532 F. App'x at 351–52 (4th Cir. 2013) (internal quotation marks omitted).

Plaintiff's conduct in this Court leads me to conclude that he acted with improper motive in bringing this suit, that he took multiple, objectively unreasonable legal and factual positions,

and that a fee award is needed to encourage defendants like Autry to protect their rights against those who, like Caner, seek to suppress criticism.  Equally, those like Caner should be deterred from exploiting the court system for their own purposes.  Therefore, I find that the *Diamond Star* factors weigh in favor of awarding Defendant reasonable attorney's fees and costs.

### 1.  The Parties' Motivations and Objective Reasonableness of Positions

From settlement discussions[3] through his reply on this Motion for Fees, Plaintiff displayed his improper motivation for bringing this suit and took many objectively unreasonable positions.  Shortly after the case was filed, Defendant agreed to give Plaintiff everything he sought in this suit, and more. Within two days of the filing of the first complaint, Defendant reached out, removed some uncontested videos of Plaintiff, and agreed that he would not post any videos of Plaintiff in the future if Plaintiff would drop the suit.[4]  *See* Mot. for Summ. J., Autry Decl., Ex. A ¶ 32.  Plaintiff requested that Defendant sign a non-disparagement agreement and answer some informal interrogatories.  Defendant did so, hoping to settle.  *Id.* at ¶¶ 33–34.  Upon a further request, he refused to make his wife and three children (four, five, and seven years of age at the time) sign non-disparagement agreements, noting they had never posted any videos of Plaintiff.  *Id.* at ¶ 35.  Defendant also refused to turn over private correspondence absent a formal subpoena.  *Id.* at ¶ 36.  Plaintiff refused to settle without these conditions and

---

[3] Although Federal Rule of Evidence 408 bars consideration of settlement discussions in certain circumstances, it is appropriate to consider these discussions on a motion for fees for the purpose of determining what relief a plaintiff sought or the extent of success a plaintiff enjoyed.  *See, e.g.*, *A.D. v. California Highway Patrol*, 712 F.3d 446, 460–61 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 531 (2013); *Lohman v. Duryea Borough*, 574 F.3d 163, 167–69 (3d Cir. 2009) (citing Fed. R. Ev. 408).  I may also consider settlement discussions to examine Plaintiff's motivations and general litigation conduct on this Motion for Fees.  *See, e.g.*, *Moshir v. Automobili Lamborghini Am. LLC*, 927 F. Supp. 2d 789, 796 (D. Ariz. 2013) (considering evidence of defendant's "conduct and statements" during settlement negotiations in deciding motion for fees and costs); *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 136 (D. Conn. 2010) (considering settlement discussions on motion for fees as evidence that plaintiff took unreasonable positions during the litigation).

[4] The contested videos had already been removed from YouTube.com at this point.

informed Defendant that he might "follow this copyright suit with defamation lawsuits and with the likely outcome of bankrupting those involved." *Id.* at ¶ 37.

Plaintiff now claims that he negotiated to settle in good faith. He attempted to obtain non-disparagement agreements from Defendant's family, he says, because he did not "trust[] that Mr. Autry would uphold his end of the settlement," instead "fear[ing] that Mr. Autry would repost the videos under different names, namely those of his wife and children." Pl.'s Resp. 5. Plaintiff does not deny Defendant's other assertions, but claims he sought the names and identities of other critics, plus non-disparagement agreements from Defendant's family, to ensure Defendant would not re-post the videos under another name. Pl.'s Resp. at 5–6.

I do not find Plaintiff's explanations persuasive. If Plaintiff was truly concerned about Defendant re-posting the videos, he could have drafted an agreement explicitly precluding this conduct (perhaps like the non-disparagement agreement to which Defendant assented). If Defendant defied the agreement, Plaintiff could have sued to compel compliance. Instead, he submitted interrogatories and insisted on terms that overwhelmingly focused on eliminating criticism, rather than protecting any copyright claims he had in the Count One and Two Videos. *See, e.g.*, Mot. for Fees, Ex. C (showing informal interrogatories Plaintiff asked Defendant to answer, including questions about the identities of bloggers, who at Liberty University knew or helped Defendant in his work, and how coordinated the blogging efforts had been). Furthermore, Plaintiff has not denied that he threatened future defamation lawsuits "with the likely outcome of bankrupting those involved." *See* Mot. for Summ. J., Autry Decl., Ex. A ¶ 37. This conduct strongly suggests that Plaintiff cared more about protecting himself from criticism and harassing his critics than protecting his alleged copyrights.

Plaintiff's motivations might not be clear solely from his settlement conduct. But this case contains too many instances of Plaintiff's dilatory conduct and objectively unreasonable litigation positions to credit his recent assertions of good faith. After agreeing that Autry's part of this case should be severed and transferred to this Court, Plaintiff delayed in taking the right steps to allow the case to move forward. After granting Plaintiff considerable leeway, this Court found that it had "no concrete indication that Plaintiff intend[ed] to do anything but delay." *See* Mar. 21, 2014 Order at 2. Plaintiff only complied after a direct show cause order from this Court. *Id.*

In the Western District of Virginia, Local Rule 6(d) provides that attorneys not licensed or qualified to practice in Virginia may appear before this Court "only in association with a member of the bar of this Court, upon motion of such member," which must be submitted "within 30 days of . . . transfer." W.D. Va. Gen. R. 6(d). Although Defendant timely complied, Plaintiff missed this deadline. Two days after the deadline, this Court's deputy clerk called Plaintiff and was told Plaintiff was in the process of associating with local counsel. The deadline was reset for one week later. Again, the deadline passed without word from Plaintiff. One week after that, Plaintiff told the deputy clerk that he had forwarded the motion for association to local counsel, and that it should be received shortly. One day after that, Plaintiff called and claimed that local counsel could not associate with Plaintiff due to a conflict. Plaintiff again promised to actively seek local counsel, but called a week later to delay the process again due to a supposedly pending settlement. One week after that, no counsel had been obtained and Plaintiff had sent no word of the settlement discussions. On March 21, 2014, this Court issued an order directing Plaintiff to gain local counsel within seven days or show cause why his case should not be dismissed. On March 28, 2014, Plaintiff finally complied.

It is hard to understand this conduct as anything but dilatory, and Plaintiff's erstwhile apology does not explain it otherwise. *See* Pl.'s Resp. 9–10. After an entire month had passed following the transfer of this case, Plaintiff had not obtained local counsel. It took Plaintiff an additional two weeks to even send a motion for association to local counsel, during which time, apparently, no conflict check was performed. Another two weeks passed, with more excuses from Plaintiff. It took an extra month, considerable prodding from the deputy clerk, and a show cause order from this Court to gain Plaintiff's compliance with a simple local rule.

Despite his leisurely pace in obtaining local counsel, within a week of obtaining that counsel Plaintiff contested Defendant's motion to stay discovery, pending the Motion for Summary Judgment. The parties held a hearing before Magistrate Judge Ballou, and he issued an order allowing for the exchange of written discovery and initial disclosures. Plaintiff did not seek any discovery in the month between that order and the hearing on the Motion for Summary Judgment; neither had he sought discovery in the months preceding the case's transfer. *See* Br. on Mot. for Fees 7. This pattern of delay, dispute, and then neglect of crucial issues is woven throughout this case.

Plaintiff claimed at the hearing on the Motion for Summary Judgment that he needed more discovery before the case could be decided, citing remaining issues of material fact. Yet, when pressed to name those issues, he could not give a direct answer. Neither had he attempted to gather discovery in the month before the hearing to shore up his arguments. Instead, he cast aspersions on Defendant and made broad references to his view of copyright law.

The way Plaintiff's counsel conducted himself at the hearing was just an extension of the sparse but careful pleading and briefing Plaintiff and his counsel undertook,[5] "unusual conduct"

---

[5] For example, Plaintiff carefully worded his amended complaint in October 2013 in an attempt to conceal that he never filed a copyright application for the Count Two Video, which he knew or should have known was a

that I observed "[gave] rise to the impression that [Plaintiff sought] to reveal as little as possible to conceal for as long as possible that his claims lack merit." *Caner v. Autry*, No. 6:14-CV-00004, --- F. Supp. 2d ---, 2014 WL 2002835, at *7 (W.D. Va. May 14, 2014). Ultimately, I found that "[e]ven with the evidence Plaintiff [sought], and viewing that potential evidence in the light most favorable to Plaintiff as the nonmoving party, no reasonable jury could return a verdict for Plaintiff." *Id.* at *21.

Plaintiff's sparse trickle of written argument gave way at the hearing to an overflow of objectively unreasonable claims. For legal claims, Plaintiff carelessly made sweeping, often erroneous assertions without citing authority or briefing his arguments. On factual issues, Plaintiff either cast unsupported aspersions[6] or asserted boldfaced contradictions, adopting whatever narrative best served him at the time.

On one occasion, Plaintiff argued that Defendant should not receive fair use protection because Defendant "once worked for Plaintiff, and is a disgruntled 'former employee' who 'was fully supportive of [Plaintiff], worked under [Plaintiff] and was terminated and has, we believe, inappropriately attempted to work this copyright issue on Youtube and other places with the purpose of economically hurting [Plaintiff],' by engaging in 'cyber terrorism' with a 'vindictive and destructive' motivation." *Caner*, 2014 WL 2002835, at *8 (quoting Hearing Tr. at 9, 11, 14, Apr. 30, 2014 (docket no. 64)). Defendant has declared that he never worked for Plaintiff, and

---

prerequisite to a copyright suit. *See* Pl.'s Resp. 9 ("Because of the short time limit to file . . . Dr. Caner filed the suit, explored his legal options during the 120 day time limit, filed his copyright applications, [and] amended his Complaint (Dkt. # 13) to reflect the registration with the Copyright Office . . . ."). *Compare* Am. Compl. ¶ 14 ("Dr. Caner owns the copyright to the content of his presentation [in the Count One Video]; his copyright application is currently pending at the Copyright Office) *with* Am. Compl. ¶ 22 ("Dr. Caner owns the copyright to the content of his presentation [in the Count Two Video] and has not authorized Autry to use any portion of this work."). He persisted in claiming copyright infringement for the Count Two Video, only admitting in April 2014 at the hearing, in response to a direct question, that he had not filed a copyright application for that video.

[6] Plaintiff has cast irrelevant and unprofessional aspersions throughout this case, from erroneously calling Defendant a disgruntled former employee and accusing Defendant of "cyber terrorism" on the last motion, to asserting his concern over the posting of his videos by a "convicted felon that he had never met . . . the other defendant in the Texas case" on this Motion for Fees. *See Caner*, 2014 WL 2002835, at *8; Pl.'s Resp. 4.

was never fired by him. *See* Br. on Mot. for Fees 4. Plaintiff should have known this from his own recollection and from an informal interrogatory Defendant answered in July 2013. *Id*; Mot. for Fees, Ex. C ¶ 6. As I explained in my May 14, 2014 Memorandum Opinion, the law is also clear that a transformative, critical use of another's work can economically harm the author and still receive fair use protection. *Caner*, 2014 WL 2002835, at *9 (citing *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 591–92 (1994)). The position Plaintiff took at the hearing was objectively unreasonable, both legally and factually.

Deepening its unreasonableness, Plaintiff has directly contradicted his description of Defendant as a disgruntled former employee on this Motion for Fees. Arguing he pursued this case in good faith, Plaintiff now claims he "had no prior knowledge or relationship with Mr. Autry and has no desire to, in bad faith, vex and harass him." Pl.'s Resp. 5. When it suited him to describe Defendant as a vindictive, disgruntled former employee, he did so. Now, a narrative where Plaintiff does not know Defendant is offered to bolster Plaintiff's purported good faith. I do not credit this boldfaced contradiction. It stands as one example of an objectively unreasonable position taken by Plaintiff that supports an award of attorney's fees for Defendant.

Plaintiff has taken numerous objectively unreasonable legal positions as well, including on this Motion for Fees. On the Motion for Summary Judgment, Plaintiff asserted that discovery would show Defendant could not assert the fair use defense because he was "not 'qualified' to direct 'appropriate criticism' at Plaintiff, unlike 'people that are qualified to render those opinions i[n] the market place and exchange of ideas in academia and elsewhere.'" *Caner*, 2014 WL 2002835, at *8 (quoting Hearing Tr. at 11, 14, Apr. 30, 2014) (docket no. 64)). As I made clear in the May 14, 2014 Memorandum Opinion, no authority supports this argument, and it flies in the face of how the First Amendment and fair use doctrine operate. *Id.* at *8–9. Not

13

surprisingly, Plaintiff never briefed this argument and gave no authority to support it during the hearing. Plaintiff took an objectively unreasonable legal position, forcing this Court and opposing counsel to waste time addressing his untenable position.

Even after a rebuke for his spurious arguments on the Motion for Summary Judgment, Plaintiff has carelessly advanced more objectively unreasonable arguments on this Motion for Fees. One illustration is his claim that Defendant should receive less or no fees because his brother and attorney "assumed this case *pro bono*, and did not charge any fees whatsoever." Pl.'s Resp. at 11. Of course, Plaintiff cites no supporting authority, and case law says exactly the opposite. *Blanchard v. Bergeron*, 489 U.S. 87, 93–94 (1989) ("And where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee."); *Blum v. Stenson*, 465 U.S. 886, 892–96 (1984) (finding the same, construing purpose of awarding fees to civil rights attorneys); *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234–35 (4th Cir. 2001) ("But courts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client and, in some cases, received public funding."). If Plaintiff's counsel had bothered to research this question, as this Court and opposing counsel have, he would have known as much. His continuous frivolous arguments have unnecessarily extended the length and cost of this litigation.

Finally, as I found in the May 14, 2014 Memorandum Opinion, the evidence in this case "suggests Plaintiff brought this suit to suppress legitimate criticism of alleged contradictions in the narrative that supported his rise to prominence," rather than for the proper motivation of protecting an illegal appropriation of his work under the Copyright Act. *See Caner*, 2014 WL 2002835, at *18. To clarify on this Motion for Fees, the evidence supports a finding that

14

Plaintiff brought this suit for an improper motivation, and I so find. *See cf. Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362, 1368 (E.D. Va. 1995) (finding religious organization brought copyright suit against journalist who published snippets of its works to "stifle criticism and dissent of the religious practices of Scientology" and to destroy its opponents, and awarding attorney's fees). The parties' motivations and the objective reasonableness of their positions[7] therefore weigh in favor of granting Defendant attorney's fees.[8]

### 2. Considerations of Compensation and Deterrence

The same conduct that proved objectively unreasonable and showed Plaintiff's improper motivation drove up the costs of this litigation. The facts of this case clearly indicated that Defendant fairly used the Count One and Count Two Videos, but Plaintiff brought this suit anyway. Once initiated, Plaintiff increased the work load by rejecting an eminently reasonable settlement offer at the beginning of this litigation, and by making untenable arguments throughout. As is clear from my discussion of his motivations and the reasonableness of Plaintiff's arguments, considerations of compensation and deterrence weigh heavily in Defendant's favor.

---

[7] Defendant and his counsel have conducted themselves prudently throughout this litigation, and I have seen no indication of improper motivation or objectively unreasonable positions on their part.

[8] Even if I had not found that Plaintiff acted with improper motivation in bringing this suit, I would award Defendant attorney's fees due to this suit's frivolousness. *See, e.g., Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994) (finding district court abused discretion in not awarding attorney's fees to defendant where copyright suit was "without merit for numerous reasons" and defense was "meritorious," holding that "when a party has pursued a patently frivolous position, the failure of a district court to award attorney's fees and costs to the prevailing party will, except under the most unusual circumstances, constitute an abuse of discretion."); *Mattel, Inc. v. Walking Mountain Prods.*, No. CV99-8543RSWL(RZX), 2004 WL 1454100, at *2 (C.D. Cal. June 21, 2004) (awarding fees after finding a plaintiff's copyright claims objectively unreasonable and frivolous, noting plaintiff "is a sophisticated entity with access to good legal representation," that the "claims were not in an unsettled area of law and had little likelihood of success," and that plaintiff did "not appear to be motivated by the protection of a valid interest."). *Cohen v. Virginia Elec. & Power Co.*, 617 F. Supp. 619, 623 (E.D. Va. 1985) (awarding attorney's fees to prevailing defendant even absent bad faith, where "plaintiff caused defendant considerable expense and trouble in plaintiff's losing cause.") *aff'd in part, appeal dismissed in part*, 788 F.2d 247 (4th Cir. 1986).

Awarding attorney's fees for defendants who win copyright infringement suits serves both to discourage meritless lawsuits that might stifle legitimate criticism, and to encourage defendants to vindicate their rights against these meritless suits. Both of these ends serve the purposes of the Copyright Act, in that they encourage the beneficial use of others' works while discouraging copyright suits that seek to squelch creativity or criticism. *See, e.g.*, *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (awarding fees and holding that "[w]hen a fee award encourages a defendant to litigate a meritorious fair use claim against an unreasonable claim of infringement, the policies of the Copyright Act are served."); *Diamond Star*, 30 F.3d at 506 (finding that "the goal of deterring a party from pursuing frivolous litigation is furthered by the imposition of attorney's fees and costs," and that the goal was furthered in a case involving a meritless copyright claim).

In this case, Plaintiff filed a copyright infringement suit to stifle criticism, not to protect any legitimate interest in his work. He and his counsel prolonged this litigation, costing Defendant and his attorney valuable time and money. Defendant's counsel has set aside other profitable matters to attend to this meritless litigation, and deserves compensation for doing so. Likewise, Plaintiff should be deterred from seeking to use the Copyright Act to stifle criticism in the future.[9] I find that the *Diamond Star* factors weigh in favor of awarding Defendant attorney's fees and costs in this copyright suit; therefore, I will employ the lodestar method to examine whether Defendant has requested a reasonable amount of fees and costs.

---

[9] Plaintiff requests a fee reduction if fees are granted because he claims he is "not in a financially suitable position to handle the fees described . . . ." Pl.'s Resp. 12 & n.3. If I were to consider the financial positions of the parties, Plaintiff's financial position would weigh against him, especially as contrasted to the financial position of Defendant. *See* Reply on Mot. for Fees 14–15. I need not do so, because as I have said before, "although [Plaintiff] claims that it is unable to pay an award of attorney's fees, [his] allegations of poverty do not reduce the costs of this litigation that could have been avoided but for the unreasonable positions [he] has taken." *Silver Ring Splint Co. v. Digisplint, Inc.*, 567 F. Supp. 2d 847, 858 (W.D. Va. 2008).

## B. Lodestar Calculation

Defendant requests $34,389.59 in attorney's fees and costs. This figure includes $34,262.50 in attorney's fees, which represents 148.2 hours, mostly billed at $250 per hour.[10] The remaining $127.09 represents filing fees, shipping fees, and other recoverable costs. Defendant's counsel has not charged for any of the hours he spent on this case prior to the Amended Complaint's filing, including preliminary research, interviewing Defendant, and settlement discussions in June and July. Counsel says he was not keeping track of those hours, as he hoped negotiations would result in a settlement. *See* Decl. of Joshua Autry, Mot. for Fees, Ex. A ¶ 14. Defendant's counsel says he also attempted to control costs by requesting telephonic hearings before this Court and Judge Ballou, by seeking to delay discovery until after the disposition of the Motion for Summary Judgment, and by not further researching and supplementing his reply in this Court with Fourth Circuit case law (the Motion for Summary Judgment and response thereto were briefed under Fifth Circuit case law). *Id.* at ¶¶ 12–13.

Employing the *Johnson* factors, I find that Defendant both expended a reasonable number of hours and requests payment at a reasonable rate in this case. *See Robinson*, 560 F.3d at 243 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). In determining "what constitutes a 'reasonable' number of hours and rate," my discretion is guided by the following twelve factors, from *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4)

---

[10] The Motion for Fees names those seeking fees as Mr. Joshua Autry, an attorney, and "MAS," an unnamed paralegal. Joshua Autry billed 135.8 hours at $250 per hour, and "MAS" billed 12.4 hours, at $75 per hour. *See* Mot. for Fees, Ex. F; Reply on Mot. for Fees, Ex. H. The average hourly rate is about $232. Joshua Autry requests $28,257.50 ($250 per hour for 115.5 hours of work, with one entry at $225 per hour), from the filing of the amended complaint through the filing of the Motion for Fees, plus $930 for the paralegal's work ($75 per hour for 12.4 hours). He requests an additional $5075 ($250 per hour for 20.3 hours) for his work on the reply on this Motion for Fees. *See* Reply on Mot. for Fees at 1. Plaintiff does not request an amount greater than this figure, so no lodestar multiplier is involved. *See generally Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (discussing calculation of lodestar: multiplying the hours spent times a reasonable hourly rate).

the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243–44).[11]  I must also consider the prevailing market rate in this community for lawyers of comparable skill, reputation, and experience in determining a reasonable rate for the work performed.  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Robinson*, 560 F.3d at 244.

First, Defendant's counsel submitted declarations that the hourly rates he requests are reasonable, from attorneys in two jurisdictions—Richardson, Texas, where this litigation began, and Lynchburg, Virginia, where this litigation concluded.  *See* Mot. for Fees, Exs. D & E. Defendant's counsel also submits time sheets and other evidence demonstrating that the fees he requests are reasonable.

The declaration of Joshua M. Autry, Defendant's counsel, demonstrates a fair amount of federal litigation and appellate experience, trial experience, and some experience with First Amendment cases.  Mot. for Fees, Ex. A ¶¶ 3–5, Ex. B.  From his resume, it appears Defendant's counsel has enjoyed success in federal litigation and appeals.  Mot for Fees, Ex. B.  During this litigation, Defendant's counsel displayed adeptness at spoken and written argument, and at the research and presentation of his arguments.  These factors all weigh in support Defendant's requested rate of $250 per hour for his work, and $75 per hour for the work of his paralegal.  *Cf. Robinson*, 560 F.3d at 243–44 (citing "the customary fee for like work" and "the experience, reputation, and ability of the attorney" as *Johnson* factors to be considered).

---

[11] After this step, a deduction is sometimes made in the fee amount to account for pursuit of unsuccessful claims. *See, e.g.*, *Robinson*, 560 F.3d at 243–44. Since Defendant completely prevailed on summary judgment, I will not make such a deduction in this case.

The first six *Johnson* factors weigh in favor of Defendant's requested fee. It was not difficult to conclude that a fair use defense applied in this case. Yet, it did raise some novel questions involving prerequisites to copyright suit in the Fourth Circuit, and the case overall required thorough research, briefing, and argument. Plaintiff increased the time and labor expended in this case by failing to address Defendant's arguments until the hearing on the Motion for Summary Judgment, without the benefit of advanced written citation or argument. Plaintiff's sparse pleading and briefing also increased the background research and investigation Defendant's counsel had to perform. Making objectively unreasonable arguments at the hearing on the Motion for Summary Judgment and in the response brief on this Motion for Fees cost Defendant's counsel more unnecessary time and effort. Although not a particularly complex case, a fair amount of skill was necessary to research the copyright law issues, brief them thoroughly, and advocate against a moving target. Mot for Fees, Ex. A ¶¶ 9–13. As Defendant's counsel has declared, he forewent other representation to spend time on this case, with the expectation that he could recoup this cost in prevailing party fees if he successfully showed Plaintiff's claims were meritless. Mot. for Fees, Ex. A ¶ 6.

Several of the *Johnson* factors have little or no application to this case. The time limitations imposed were not particularly pressing. There was no amount of damages in controversy, although Defendant's counsel faced an opportunity cost for pursuing this case over others in his private practice. Although Defendant and his counsel are brothers and have a long personal relationship, Defendant's counsel performed these services pro bono in the hopes of defeating a meritless suit and obtaining prevailing party fees. Therefore, the length and nature of their professional relationship does not weigh against an award of fees. It is unclear whether this case would be undesirable within the Lynchburg legal community.

Finally, attorneys' fee awards in similar cases weigh in favor of granting Defendant's counsel his requested fee. In a case where this Court found that a party had increased litigation costs due to untenable positions and unreasonable arguments, this Court awarded the prevailing plaintiff from $205 per hour to $380 per hour for its attorneys' work on a copyright claim. *See Silver Ring Splint Co. v. Digisplint, Inc.*, 567 F. Supp. 2d 847, 858–59 (W.D. Va. 2008) (ordering award of attorneys' fees to prevailing party in copyright case); *Silver Ring Splint Co. v. Digisplint, Inc.*, No. 3:06CV00065, 2008 WL 2967458 (W.D. Va. Aug. 1, 2008) (awarding fees for work performed from 2006–2008 on copyright case by attorneys of varying experience); *Silver Ring Splint Co. v. Digisplint, Inc.*, No. 3:06CV00065, June 30, 2008 Motion for Fees, Ex. B ¶¶ 16–17 (ECF No. 73). *Cf. Hummel v. Hall*, No. 6:11-CV-00012, 2012 WL 4458450, at *2 & n.4 (W.D. Va. July 18, 2012) (awarding counsel of prevailing party $290 per hour in case involving Truth In Lending Act and state law usury claims); *Kindred v. McLeod*, No. 3:08CV00019, 2010 WL 4814360, at *12 & n.14 (W.D. Va. Nov. 19, 2010) (awarding from $225 per hour to $375 per hour in state-law consumer protection action).

I also find that the hours Defendant's counsel expended on this litigation are reasonable. He spent 135.8 hours, plus 12.4 hours for his paralegal's time, through the reply on this Motion for Fees. Although no discovery was conducted, Defendant had to investigate, research, and brief a large number of issues. He also does not count all the hours he spent on preparation, research, and fruitless negotiation before the filing of the amended complaint. Considering that counsel had to defend this litigation in two forums and that Plaintiff increased the time expended through objectively unreasonable claims, I find the hours expended are reasonable.

20

### C.  Reasonable Costs

Finally, I find that $127.09 in costs is reasonable.  This number encompasses recoverable costs like filing fees, legal search fees, and some minor shipping costs.  For the same reasons I find the award of attorney's fees to be reasonable, I will award Defendant these costs.

### V.  CONCLUSION

Since I find that the May 14, 2014 Memorandum Opinion and Order conferred prevailing party status on Defendant, it is within my discretion to award him reasonable attorney's fees and costs under 17 U.S.C. § 505.  After reviewing the parties' submissions and considering the *Diamond Star* and *Johnson* factors, I find that the $34,262.50 in attorney's fees and $127.09 in costs requested by Defendant is reasonable, and I will exercise my discretion to award Defendant the entire $34,389.59 in fees and costs.  An appropriate order follows.

Entered this ___1st___ day of July, 2014.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE